Knut S. Johnson (CSB 125725)
LAW OFFICE OF KNUT S. JOHNSON
550 West C Street, Suite 790
San Diego, California 92101
(619) 232-7080
knut@knutjohnson.com

Devin Burstein (CSB 255389)
WARREN & BURSTEIN
501 West Broadway, Suite 240
San Diego, California 92101
(619) 234-4433
db@wabulaw.com

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 19-cr-1685-CAB |
| Plaintiff, | Mr. Liddy's consolidated reply to the government's oppositions to his motions. |
| v. | |
| RAYMOND LIDDY, | September 12, 2019, at 10:00 a.m. |
| Defendant. | |

Mr. Liddy submits this consolidated reply to the government's oppositions to his motions to dismiss the indictment, suppress evidence based on overbroad warrants, and reconsider the prior motion to suppress evidence.

**I.
The indictment should be dismissed.**

Mr. Liddy moved the Court to dismiss the indictment because: (1) it is untimely under the Speedy Trial Act; and (2) fails to state an offense or

1

satisfy due process. The government disputes both points, but its arguments are without merit.

A.  <u>The indictment was untimely</u>.

The Speedy Trial Act provides: "Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b).

The government claims it has not run afoul of this rule because the prior information was timely and the new indictment is "'akin to a superseding indictment.'" Dckt. 18 at 2 (citation omitted). In support of this position, it relies on *United States v. Alvarez-Perez*, 629 F.3d 1053, 1057-58 (9th Cir. 2010). But *Alvarez-Perez* is inapposite. That case addressed a wholly different provision of the Speedy Trial Act – 18 U.S.C. § 3161(c)(1) – requiring trial within "seventy days from the filing date (and making public) of the information or indictment." *Id*. Thus, the language quoted by the government is taken out of context.

Far more relevant is *United States v. Lopez-Osuna*, 242 F.3d 1191 (9th Cir. 2001). As here, *Lopez-Osuna* addressed the 30-day limitation under section 3161**(b)**. And it held: "After this time [30 days], the government may

indict on new charges, or it may abandon the original charges upon which the defendant is held, *but it may not indict on the same charge for which the defendant was arrested.* The sanction for violating the thirty-day time period is that the government either must drop the charges or the court must dismiss the indictment against the defendant." *Id.* at 1197 (citation omitted, emphasis added).

In Mr. Liddy's case too, because the government "indict[ed] on the same charge for which the [he] was arrested," under section 3161(b) and *Lopez-Osuna*, "the court must dismiss the indictment." *Id.*

B.  <u>The indictment fails to state an offense and satisfy due process.</u>

Dismissal is also required because the indictment fails to state an offense, satisfy due process, and avoid vagueness concerns. *See United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979).

First, the indictment fails to identify the charged "matter" in which the alleged contraband was contained. The government claims that allegation is not required because the "matter" is not an element. Dckt. 18 at 3-4. But yes, it is.

In this context, the "matter" is the container – e.g., the book, videotape, computer, etc., where the images are allegedly located. As the Ninth Circuit held in *United States v. Lacey*, 119 F.3d 742, 748 (9th Cir. 1997), "the trial

court had to instruct the jury that to convict [the defendant] it must find that he knew the depictions were *on his disks and drive.*" (emphasis added). In other words, "the instructions, by failing to require a finding that [the defendant] knew the files were on his disks, *omitted an element of the offense.*" *United States v. Romm*, 455 F.3d 990, 1003 (9th Cir. 2006) (emphasis added).[1]

Indeed, the Ninth Circuit model instructions contain brackets to specify the type of container – the matter – in which the visual depiction was allegedly possessed – e.g., "books," or "films," etc. *See* Ninth Cir. Manual of Model Jury Instr. Crim. 8.185. If specificity were not required, the brackets would be superfluous. They are not.

Thus, the "matter" is an element that must be pleaded and proved. Here, it was not pleaded. The indictment fails to state the offense. *See Cecil*, 608 F.2d at 1297 ("[t]o allow a prosecutor or court to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection

---

[1] The government's repeated citations to *United States v. Morlan*, 756 F.2d 1442 (9th Cir. 1985), do not advance its cause. That case has nothing to do with the issues raised here, as it was decided under a different statute with different language.

4

that the grand jury was designed to secure") (citation and quotations omitted).

Second, the indictment fails because it contains no concrete time frame. The government claims it is not required to allege when the crime began. Dckt. 18 at 5-6. Its position is that defendants have no right to be informed of when they supposedly violated the law. This is wrong. The law does not allow prosecution by surprise. And the cases the government cites prove the point.

The government relies on *United States v. Forrester*, 616 F.3d 929 (9th Cir. 2010); *United States v. Rohrer*, 708 F.2d 429 (9th Cir. 1983); and *United States v. Tavelman*, 650 F.2d 1133 (9th Cir. 1981). Dckt. 18 at 5. But all are conspiracy cases and thus the alleged overt acts necessarily limited the charges: "uncertainty regarding a conspiracy's beginning and ending dates does not render an indictment fatally defective *so long as overt acts alleged in the indictment adequately limit the time frame of the conspiracy*." *Forrester*, 616 F.3d at 941 (emphasis added).

Here, there is no conspiracy charge, no overt acts, and *nothing* (not even a statute of limitations) to limit the time frame. Accordingly, under *Cecil*, 608 F.2d at 1297, "the indictment fail[ed] to allege sufficient facts to

facilitate the proper preparation of a defense and to ensure that the defendants were prosecuted on facts presented to the Grand Jury."

Third, the indictment does not adequately protect Mr. Liddy's double jeopardy rights. The government responds, "the change to a date range [] *broadens* Liddy's ability to claim double jeopardy in a future prosecution." Dckt. 18 at 6 (emphasis in original). This type of doublespeak is a good reminder that "the ten most terrifying words in the English language may be, 'I'm from the government and I'm here to help you.'" *Garcia-Aguilar v. United States Dist. Court*, 535 F.3d 1021, 1023 (9th Cir. 2008).

No matter, the double jeopardy problem is simple: the indictment does not tell anyone what matter(s) Mr. Liddy is charged with possessing or when that possession took place. Nothing in the government's response addresses this shortfall, and the expanded date range does not help.

One last note: government counsel is not very good at interpreting defense counsel's reactions. Dckt. 18 at 7. Moreover, the smugness is unwarranted. The government distorted the truth in asserting the purpose of the indictment was to add a forfeiture allegation. As the Court stated at the arraignment on May 16, 2019: "I understood when you said you were going to do this [file an indictment] that there wasn't any change in the charge, *that it was just to add the forfeiture provision.*" Dckt. 116 at 8, in

6

Case No. 17-cr-2475-CAB (emphasis added).  Indeed, that is exactly what the government told the Court two weeks earlier:

> Your Honor, one last matter of housekeeping which I don't think should be an issue, but in light of the fact we are proceeding at least at this point with the jury trial, we are looking to indict next week, *to add a forfeiture count. We're not changing the charge. It will remain the same as in the information*. We don't intend to issue an arrest warrant or have Mr. Liddy arrested or anything like that. We'll communicate that. But in light of at least the possession charges, the facts and the evidence coming in, that will be the same. *We're going to add a forfeiture count and a date range*. I wanted to let the Court know that.

Dckt. 115 at 28, in Case No. 17-cr-2475-CAB (emphasis added).

Read in context, the government told the Court there would be *no* modification in what was charged – it would "remain the same." The only change would be adding a forfeiture count. And the passing reference to the "date range" was slipped in at the end.

This portrayal was not accurate. The government now admits its real goal in filing the indictment was to expand the possession charge and thereby counter an anticipated defense. Dckt. 18 at 7 ("the date range sought to foreclose" a defense argument). While the government's initial lack of candor is troubling, ultimately it does not matter – the indictment cannot stand.

## II.
## The search warrants were overbroad.

Turning to the search warrants, they too fail. The law is clear: "a warrant must 'be no broader than the probable cause on which it is based[.]'" *United States v. Nora*, 765 F.3d 1049, 1060 (9th Cir. 2014) (citation omitted). Here, the Yahoo and Microsoft warrants did not comply with this limitation.

A. <u>The warrants failed to limit the authorized seizure and search to the probable cause on which they were based</u>.

The warrants required Yahoo and Microsoft to provide (and thus authorized the government to seize) the entirety of Mr. Liddy's user accounts, with no date or other restrictions, as follows:

> II. Items to be provided by the ISP
>
> All subscriber and/or user information, all electronic mail, images, text messages, Yahoo Messenger data and content, histories, phone and VoIP logs, contacts or friend lists, profiles, method of payment, detailed billing records, access logs, backup data, transactional data, and any other files or records associated with the following accounts and screen/user names:
>
> Email Account: CAHUBBY@YAHOO.COM
> Screen/user name: "6LO3ZB4SBNBIU2ANCBHCHDN3GY"

and

**II.   Items to be provided by the ISP**

All subscriber and/or user information, all electronic mail, images, text messages, instant messages, chats, videos, histories, phone and VoIP logs, contacts or friend lists, groups, profiles, method of payment, detailed billing records, access logs, backup data, transactional data, and any other files or records associated with the following accounts and screen names:

Skype screen name:    "cahubby"
Email Account:        AZBOOM@LIVE.COM

APP:18, 32.

Plainly, the probable cause from the NCMEC reports did not extend to a seizure this broad. *See United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1177 (9th Cir. 2010) (en banc) ("The process of segregating electronic data that is seizable from that which is not must not become a vehicle for the government to gain access to data which it has no probable cause to collect."). Nor is the Fourth Amendment infirmity cured by the fact that the warrants limited the *final* search to data "from January 1, 2015 to present." APP:18, 32.

First, it appears the agents were initially allowed to search the *entirety* of the data to then limit what could be used to the specified date range. APP:28 (all of the data received from the service provider will be "provided to me or to any authorize federal agent. The copies will be imaged and the images will then be analyzed to identify communications and other electronic

records subject to seizure pursuant to Attachments B-1 and B-2."). In other words, the agents began by searching *everything* to see what data was created after the January 1, 2015 date.[2] APP:18, 32.

Second, the date range itself is arbitrary and overly broad. The NCMEC reports were made in January and February of 2017. This does not provide probable cause to search data from two years earlier. And even if it did, that probable cause would not extend to histories, phone and VoIP logs, contacts, etc. APP:18, 32. That type of data has nothing to do with the suspected offense. *See United States v. Shi*, 525 F.3d 709, 731 (9th Cir. 2008) ("When determining whether a warrant which authorizes the seizure of a category of items is overbroad, we consider [] whether probable cause existed to seize *all items of a category described in the warrant*") (emphasis added).

The government responds that this is "the process Congress envisioned for warranted searches of online accounts held by third-party providers." Dckt. 19 at 4. The assertion is baseless. The statute it cites, 18 U.S.C. § 2703(g), does not discuss the breadth of authorized searches.

Nor has "the Ninth Circuit approved" this process, as the government claims. Dckt. 19 at 5 (citing *United States v. Flores*, 802 F.3d 1028 (9th Cir. 2015). Rather, in *Flores*, the Ninth Circuit explained, "we need not decide

---

[2] This is a disputed factual issue requiring agent testimony.

whether the warrant was overbroad for lack of a temporal limit because even if it was, suppression of the evidence used at trial was not required . . . . the two sets of Facebook messages introduced at trial were sent on the day of Flores's arrest and thus fell well-within even the narrowest of temporal limits." *Id.* at 1045-46.

Here, the government has not proposed such a limitation on the evidence obtained from the warrants. As such, it cannot avoid the overbreadth problem.

The government, therefore, advances a parade of horribles about the "knotty problems" with "even the simplest production parameters." Dckt. 19 at 5. But modern searching technology renders the concerns a nullity. And the government's one example about message "threads" is easily answered. The warrant can authorize the seizure of any such threads if one of the messages falls within the appropriate time frame.

Moreover, in the bigger picture, the government's complaint is misplaced. By its nature, the Fourth Amendment makes law enforcement more difficult. That is a price the Framers were willing to pay. The sky did not fall after *Riley*, *Carpenter*, or *Cotterman*. Nor will it do so if this Court grants Mr. Liddy's motion.

B.     The good faith exception does not apply.

The government also says the good faith exception applies. It does not. Rather, as noted in Mr. Liddy's motion, "[t]he remedy for an overbroad search warrant is suppression of the seized evidence." *United States v. Clark*, 31 F.3d 831, 836 (9th Cir. 1994).

In *United States v. Weber*, 915 F.2d 1282, 1289 (9th Cir. 1990), the Ninth Circuit rejected application of the good faith exception in analogous circumstances. There, the court explained: (a) "the law was clear that a warrant could not be broader than the probable cause on which it was based," and (b) "the government had complete control over the timing of the search . . . . [thus] there was no need for the 'hurried judgment' upon which law enforcement decisions must often be based." Accordingly, suppression was the appropriate remedy for the overbroad warrant. *See id.*; *see also United States v. Underwood*, 725 F.3d 1076, 1086-88 (9th Cir. 2013) (rejecting the government's reliance on the good faith exception). This is equally true here.

"While the Supreme Court has articulated various rationales for the exclusionary rule, the rule's primary purpose has been to deter law enforcement from carrying out unconstitutional searches and seizures. Although the exclusionary rule is often framed as a nuisance to law

enforcement, we view it as a promoter of police professionalism and education. The exclusionary rule has helped police more effectively secure good evidence without violating the law and the rights of American citizens. The rule has also improved the quality of police training, education, and case reporting." *Id.* at 1084-85 (citations omitted).

Here, granting Mr. Liddy's motion will cause the government to seek more targeted warrants, thereby effectuating the Fourth Amendment's core guarantee.

C.   <u>The Liddy home search warrant fails with the Yahoo and Microsoft warrants</u>.

Turning to the warrant for the Liddy's home, the government claims, "even if the account warrants fall, purging information obtained through those warrants from the house affidavit still leaves a substantial basis for finding probable cause to search the house." Dckt. 19 at 8.  Not so.

On this point, the record speaks for itself.  If paragraphs 16 and 17 (addressing the information obtained from the account warrants) are struck from the warrant application, it no longer establishes probable cause to search the home.  The most salient fact was that, "[a]lthough the account had been closed by Yahoo!, the reported images, as describe in Paragraph 13

above, remained in the account and were a part of the search warrant response." APP:39.

In other words, according to the warrant application, the Yahoo warrant confirmed that the files from the NCMEC reports were found in Mr. Liddy's account. Without that link, there were only a couple of stale NCMEC reports with no direct connection between Mr. Liddy and the files. Thus, "a reasonable judge" could have found probable cause lacking. *Underwood*, 725 F.3d at 1084. No further showing is required. *See id.*

Nor do the out-of-Circuit cases cited by the government lead to a contrary conclusion. In *United States v. Bosyk*, No. 18-4302, 2019 WL 3483181 at *1-4 (4th Cir. Aug. 1, 2019), to find probable cause, the majority focused on the specific timing when a file was accessed (a fact not present here). And as the *Bosyk* dissent points out, the majority's reasoning was deeply flawed. *Id.* at *29. In *United States v. Morgan*, 842 F.3d 1070, 1073-74 (8th Cir. 2016), the opinion provides no details on the warrant application and what it did or did not contain. The case is of no help.

Finally, for the reasons discussed above, the good faith exception cannot save this warrant. Accordingly, along with the evidence from the Yahoo and Microsoft warrants, the evidence derived from the search of Mr. Liddy's home should be suppressed.

## III.
## The Court should grant Mr. Liddy's motion for reconsideration.

As to the motion for reconsideration, the defense and the government are ships passing in the night. To be clear, the defense motion does *not* stem from "a conversation about resolution between the prosecutor and defense counsel over coffee." Dckt. 20 at 2. Whatever "misunderstanding" the government is referring to, it is not shared by the defense.

Instead, the motion for reconsideration is based on what the government told the defense (Knut Johnson, Judy Clarke, Devin Burstein, and John Ellis) during the meeting regarding the Bill of Particulars. At that time, government counsel informed the defense that the evidence did not establish whether the files referenced in the NCMEC reports were *uploaded from*, rather than *downloaded to*, a computer associated with Mr. Liddy's IP address.

This is a critical piece of new information. In the warrant applications for the Internet accounts, the affiant told the issuing judge that Mr. Liddy (using the screen name cahubby) "*uploaded* an image of apparent child pornography" to Skype and later "*uploaded* ten images of apparent child pornography via Yahoo! Messenger[.]" APP:5-6 (emphasis added). The affiant included the same information in the application to search

15

Mr. Liddy's home. APP:33, 39. Additionally, the affiant swore: "the individual(s) [Mr. Liddy] *uploaded* images of child pornography to two separate online accounts, using both Skype and Yahoo Messenger, which are online services commonly used to communicate with other users." APP:42 (emphasis added).

This Court then relied on that assertion in denying Mr. Liddy's prior motion to suppress: "the primary motivating factor to a magistrate judge" was the statement "in paragraph 13 of this warrant … that the NCMEC received this CyberTip report from Yahoo regarding the user of the email account [who] . . . *uploaded* ten new images of child pornography[.]" Dckt. No. 75 at 8, in Case No. 17-cr-2475-CAB (emphasis added).

Thus, if the files were not in fact uploaded – but were instead downloaded – the probable cause calculus changes for the reasons identified in Mr. Liddy's motion for reconsideration. To repeat:

The process of *uploading* implies knowing possession. As typically understood, a person uploads an image to an email, text, or instant message, by taking an image he or she already possesses and attaching it as a file. *Downloading*, on the other hand, has no similar connotation. Rather, in downloading, an individual receives the image from a third party and

16

generally will have no idea what it depicts until it is moved to the computer and opened.

Telling the issuing judge that Mr. Liddy *uploaded* the images is tantamount to saying there was *knowing* possession. He must have known what they were because he uploaded them. But downloading the images says nothing about what Mr. Liddy knew of their content. Without more, therefore, mere downloading cannot support probable cause for *knowing* possession.

In short, the warrant applications relayed a material fact (uploading) that may have been wrong. Certainly, the affiant had no valid basis for swearing that, in fact, the images had been uploaded.[3] As such, a *Franks* hearing is required.

---

[3] This is the same affiant who included an allegation about a "Tijuana individual's" emails regarding sexual exploitation of children, which had nothing to do with Mr. Liddy or this case. That misstatement magnified the harm from the unsupported "uploading" allegations.

## IV.
## Conclusion.

Mr. Liddy respectfully requests the Court grant his motions.

Dated: September 4, 2019          Respectfully submitted,

*/s/ Knut Johnson*

Knut S. Johnson
Devin Burstein
Attorneys for Mr. Liddy