Knut S. Johnson (CSB 125725)
LAW OFFICE OF KNUT S. JOHNSON
550 West C Street, Suite 790
San Diego, California 92101
(619) 232-7080
knut@knutjohnson.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>RAYMOND LIDDY,<br><br>    Defendant. | Case No.: 19-cr-1685-CAB<br><br>Defendant's Sentencing Memorandum<br><br>November 17, 2023, 10:00 a.m. |

I.   Introduction

This Court has consistently treated Mr. Liddy with grace, compassion, and decency.  He knows he has not lived up to this Court's trust.  His performance on probation has been far from stellar.  And there have been times when he acted as if the rules did not apply to him.  Through it all, the Court remained patient with Mr. Liddy, aware of his mental health challenges.

But over the past six months in jail, Mr. Liddy has been humbled.  In truth, that time has been good for him.  He has had time to reflect on his missteps and how a life filled with honor is now marred by disgrace.  The impact on him has been profound.

On this point, it is important to be clear that Mr. Liddy challenged some allegations against him, *not* because he denied engaging in threatening conduct, but because he really believed he was dealing with a scammer. And the evidence at the hearing confirmed he was acting under that flawed belief. While this does not excuse his conduct, it does help to explain his actions. Bottom line, however, is that Mr. Liddy wants to tell the Court that he knows he messed up his probation. As he explains in his letter, he knows he breached the Court's trust. He knows he failed his family's expectations. He also knows and deeply regrets that his words hurt Officer Singleton. Above all, he knows that he can do better. And he will.

To this end, for his first 55 years, Raymond Liddy lived an extraordinary life. He overcame early childhood poverty and his father's incarceration to join the Marines and graduate from law school. Unfortunately for Mr. Liddy, during his time in the Marines, he received physical and emotional wounds that impact him to this day. At the same time, while still serving, the purpose he felt serving as a member of the Marine Corps was his refuge. But once he left the Marines in 2016, the world he worked so hard to cultivate began to fall apart.

Some of these concerns were raised in his previous sentencing memorandum, which is Exhibit A to this memo. Attached as Exhibit B is the transcript of that sentencing hearing where the defense previously explained parts of Mr. Liddy's background. And the recently filed under seal psychological report provides more background on Mr. Liddy's condition.

So now this Court must decide what sentence to impose for Mr. Liddy's probation violation. That probation violation gives the Court various sentencing options. For instance, it could sentence him under the Chapter 7 violation guidelines. Or, this Court has the authority to resentence him under the operable guidelines of his original sentencing. Under either approach, this Court should consider the guidelines applicable as if he were convicted of the offense alleged in the OSC.

And if instead this Court resentences Mr. Liddy on the underlying charge, it should be for what the evidence established: he deleted pornographic images when he saw they included children. Setting aside whether he should have deleted more quickly, there can be no doubt that his case contrasts with the typical child pornography prosecution: he never searched for child pornography, never asked for child pornography, never shared child pornography, and never collected child pornography. And as this Court is aware, he has suffered greatly from post-traumatic stress disorder due largely to his service to this country.

As a starting point, the statute this Court found Mr. Liddy violated, allegation 2, conduct described as in violation of 18 USC § 875(c)), has a maximum sentence of five years and a guidelines offense level 12 under §2A6.1. According to Judiciary Sentencing Information (JSIN),[1] 28% of offenders sentenced under this guideline received no

---

[1] JSIN is a data base maintained by the U.S. Sentencing Commission and it may be found here: https://jsin.ussc.gov/analytics/saw.dll?Dashboard (last viewed November 6. 2023 at 11:08 a.m.). A true and correct copy of the JSIN information referenced here is attached as Exhibit C.

3

custody. And for those who received a sentence of imprisonment, the average length of imprisonment was 8 months, and the median length of imprisonment was 7 months. Ex. C.

Next, under Section 7B1.4, the probation/supervised release Revocation Table, the guideline range would be 12-18 months.

And as the Court noted, it could instead revoke probation and resentence Mr. Liddy, which includes calculating the guidelines for the underlying offense, and considering all the other factors. At the original sentencing hearing, this Court found his final offense level to be 26 and a resulting guideline range of 63 to 87 months. Ex. B[2], 10:17-19. This Court then agreed with U.S. Probation, the government, and the defense that departures and variances applied. The Court stated:

> The Court is giving departures that the government also agreed with for military service, community service, some mental health issues for a total of five points down to a 21, and the guideline range of 37 to 46 months, which puts the low end pretty much at the government's recommendation. ¶ Interestingly, probation seemed very much on the same page that I did that after having reviewed all of this, weighing all of the mitigating factors, all of the somewhat unusual circumstances of this case, and the defendant's history and characteristics, came to the conclusion that for this defendant no custody would really be appropriate, but for purposes of general deterrence, made a recommendation of 21 months of custody. And I agree with the first part and not the second part. Largely because I think -- and I will explain it in a little more detail my analysis of the defendant's conduct in this case, but in light of custodial time, the COVID situation is weighing in as a factor as well. [Ex. D, 10: 20 – 11:11.]

---

[2] Exhibit B is a copy of the transcript of the original sentencing hearing in this case.

This Court also noted that it saw a "man in his 50s [now 60s] who . . . went down a rabbit hole, and other people sent him material that he viewed and he saved." Ex. B, 12:20 – 24.  This Court also noted that there was no evidence Mr. Liddy was looking for or sharing this material.  Ex. B, 12:25 – 13: 2.

II.     Mr. Liddy's Life and The Night of the Incident

Mr. Liddy asks this Court to reference his original sentencing memo, attached as Exhibit A.  But here counsel would like to highlight Mr. Liddy's relationship with his father – who he had a complicated relationship with, exacerbated by his father's public persona and the stress, shame, and poverty he suffered from his father's public humiliation, prosecution, and imprisonment.

When Chaplain Price and Senior Officer Tanglao came to Mr. Liddy's home, Mr. Liddy was in emotional distress.  But he was grateful for the opportunity to thank Senior Officer Tanglao for how he treated Mr. Liddy during the DUI arrest.  And he was also thankful for Chaplain Price – a trained hostage negotiator whose job is to deescalate difficult situations – who was able to calm Mr. Liddy by talking to him about his father and how the loss of a father is so difficult for a son.  And by the time Mr. Liddy showed Chaplain Price the motorcycle (the only thing he inherited from his father), Mr. Liddy was much less stressed, anxious, or in fear because of Chaplin Price's calming presence.  Unfortunately, the audio portion of the body warn camera footage was disabled and the Court did not have the benefit of the content of this interaction.

/ / /

III. The DUI Case

Mr. Liddy received a deferred prosecution under California Penal Code § 1001.80 for the DUI arrest. That court-ordered diversion can only happen if a judge decides that the defendant was a member or former member of the military who suffers service-related PTSD (or other listed injuries) from their service. And to obtain diversion, counsel argued to the Superior Court that there was a clear link between Mr. Liddy's PTSD and his military service.

Even though he received a deferred prosecution, the conditions (both those the court required and those he did voluntarily) exceeded the conditions of probation for a typical DUI offender. He spent 2 days in jail, completed the three-month first offender program, attended the Mothers Against Drunk Driving program, continued VA counseling, continued treatment with his PTSD psychiatrist, and completed hundreds of AA meetings, even becoming secretary for his AA group. The only material difference in outcome was that Mr. Liddy did not have a conviction on his record, something the Californian legislature considered important.

IV. Mr. Liddy's Adjustment to Custody

Mr. Liddy's arrest in Tennessee resulted in a long and arduous journey to San Diego in the custody of the U.S. Marshal. Throughout that journey he could not receive the treatments he normally received for his bulging disk and the ensuing pain. And when he arrived in San Diego, he was in solitary confinement for the first few months, because of his status as a former Deputy Attorney General. But once the Marshal moved him to

the MCC he was put in the general prison population, where he could finally interact with other inmates.  Those interactions have been positive, as his letter to this Court notes.

But because of his detention, Mr. Liddy has also not been receiving treatment for his PTSD. And for Mr. Liddy, like many people with PTSD, jails and prisons are particularly difficult because of the persistent noise. Once Mr. Liddy is released from custody, he is looking forward to participating in a new PTSD treatment regimen offered by the Veterans Administration that promises a potential cure—something that Mr. Liddy will not have the opportunity for while he remains in custody.

V.     Recommended Sentence

The United States Sentencing Commission considered various approaches to sanctioning probation violations.  After considerable debate, they adopted an approach that "at the revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."  U.S. Sentencing Guidelines, Chapter 7, Part A, 3.(b) <u>Choice Between Theories</u> (2023), page 506.

The proper sanction for the breach of trust here is time served.  His more than six months in custody serves as a significant sanction, and he asks the Court to reinstate him on probation under any other conditions this Court sees fit.  Mr. Liddy acknowledges his wrongdoing. He is extremely remorseful for his conduct. That Mr. Liddy acted that way is not excused by his current mental health challenges. The good news for Mr. Liddy is

that there is promising new technology and treatment techniques that will give him the tools he needs not to be in this position again.

The requested sentence also aligns with his conduct. First, as stated above, if this Court simply used the guidelines for the § 875 violation, an average sentence (for the 75% of the offenders who received custody) would be 7 or 8 months. Second, if this Court used the sentencing guidelines for revocations, the advisory low end guideline range is 12 months. Third, if this Court resentences Mr. Liddy based on the original guideline range, the non-Covid related departures that the Court and U.S. Probation found applicable are still apt. Under all the circumstances, even under the original sentencing guidelines, a six-month/time-served sentence is still an appropriate sanction.

VI. Conclusion

Mr. Liddy asks the Court to sentence him to time-served and reinstate probation.

Dated: November 10, 2023                Respectfully submitted,

                                        */s/ Knut Johnson*

                                        Knut S. Johnson
                                        Attorney for Mr. Liddy