1                    UNITED STATES DISTRICT COURT

2                  SOUTHERN DISTRICT OF CALIFORNIA

3          BEFORE HONORABLE CATHY ANN BENCIVENGO, JUDGE PRESIDING

4

5     _____
                                      )
6     UNITED STATES OF AMERICA,       )
                                      )
7                       Plaintiff,    )   CASE NO. 19CR1685-CAB
                                      )
8             vs.                     )
                                      )   SAN DIEGO, CALIFORNIA
9     RAYMOND LIDDY,                  )
                                      )   SEPTEMBER 2, 2020
10                      Defendant.    )
      _____)

11

12

13

14

15

16       STENOGRAPHER'S REMOTELY REPORTED TRANSCRIPT OF PROCEEDINGS
                             SENTENCING W/PSR
17                             PAGES 1-34

18

19

20

21

22    Proceedings reported by stenography, transcript produced by CAT
      software

23    _____

24            Mauralee Ramirez, RPR, CSR No. 11674
                 Federal Official Court Stenographer
25                    ordertranscript@gmail.com

```
 1   COUNSEL APPEARING:

 2   For The Government:  United States Attorney's Office
                         Southern District of California
 3                       Amanda Griffith, AUSA
                         Peter Ko, AUSA
 4                       880 Front Street
                         San Diego, California 92101
 5

 6

 7   For The Defendant:   Knut S. Johnson
                          Law Offices of Knut S Johnson
 8                        550 West C Street, Suite 790
                          San Diego, CA 92101-4905
 9
                          Devin Jai Burstein
10                        Warren & Burstein
                          501 W Broadway, Suite 240
11                        San Diego, CA 92101

12                        John Charles Ellis, Jr.
                          Law Offices of John C. Ellis, Jr.
13                        1010 Second Avenue, Suite 1800
                          San Diego, CA 92101
14   .
15                        Judy Clarke, Esq.

16

17

18

19

20

21

22

23

24

25
```

1  San Diego, California; Wednesday, September 2, 2020; 1:30 p.m.

2     (19CR1685-CAB called)

3          MS. GRIFFITH:  Good afternoon, Your Honor.  Amanda

4  Griffith and Peter Ko on behalf of the United States.

5          MR. JOHNSON:  Good afternoon, Your Honor.  Knut

6  Johnson with Devin Burstein, John Ellis, and Judy Clarke, all

7  here with Mr. Liddy.  With the Court's permission, I'd like him

8  to sit there next to his wife.

9          THE COURT REPORTER:  Excuse me.  Mr. Johnson, I'm

10  having a hard time hearing you.  Could you get closer to the

11  mic, please?

12          MR. JOHNSON:  Yes.

13          THE COURT REPORTER:  Thank you.

14          MR. JOHNSON:  Do you want me to repeat that?

15          THE COURT REPORTER:  If you could, please.

16          THE COURT:  I don't think so.  He just asked for Mr.

17  Liddy to sit in the front row, which is fine with the Court.

18          In light of my role, I'm taking this off so that

19  everyone can hear me.

20          All right.  Good afternoon, Mr. Liddy.  We are here

21  today for your sentencing hearing on charges of possession of

22  images of a minor engaged in sexually explicit conduct.

23          I have reviewed and considered the indictment filed on

24  March 9th, 2019, obviously, the trial I presided over in

25  February of this year, the presentence report prepared by

1    probation, the government's sentencing materials, your

2    counsel's sentencing submissions.  I am familiar with the

3    charge and your history and characteristics.

4         There were written objections filed to the presentence

5    report by both parties. I'm going to go through, I hope, each

6    of them.  I have made notes on all of them.

7         I'll start with the defendant's objection on paragraph

8    number 4 regarding a reference to uploaded material.  It can be

9    amended to "uploaded or downloaded," although, frankly, it's

10   not something terribly pertinent to my sentencing decision; and

11   in the sentence below that, there's a reference to the

12   material, Microsoft attached the uploaded image.  "Uploaded"

13   should just be struck there and it should say "Microsoft

14   attached the image which depicted the female."

15        Paragraph 5:  The Court agrees with striking the

16   sentence at the defendant's request, the portion that says

17   "sent by the above noted email address" so that it would just

18   say:  The tip included ten attached images of the ten images,

19   and then the descriptions.

20        Paragraph 7:  The Court understands this paragraph to

21   describe the search content of an account, not the search of

22   the premises.  I'm not going to debate really the value of

23   paragraph 7.  I'm not considering it as part of the sentencing,

24   so the Court is -- to the extent there is an objection

25   regarding the description of 7, it's overruled, and the Court

1    is not -- doesn't find it pertinent.

2          Paragraph 11 is overruled as it is not incorrect.  We

3    can dispute "numerous" versus "several" and "all," but,

4    frankly, the images were found.  The Court is not -- that

5    objection is overruled.

6          Paragraph 14 and 112 regarding the number of images

7    found on the devices:  The Court is disregarding that for

8    purposes of the sentencing.  I am using only the findings that

9    were done at trial that were in his possession, which is, I

10   believe, five total images.  I believe it's five.

11         Paragraph 15 through 25, which are a series of victim

12   impact statements:  21 through 25 are foundational for the

13   restitution agreement that the parties reached.  Those are the

14   theories that the restitution is going to, so I won't strike

15   them.

16         With regard to 15 through 20, I'm not going to strike

17   them from the report, but they're there, I understand, on the

18   basis that those images relate to images that were found in

19   deleted and otherwise spaces, but they're not pertinent to any

20   restitution decision in this case so they're basically

21   disregarded by the Court.

22         Paragraphs 38 and 40 regarding the guideline

23   calculations:  Those are recommendations from probation.  This

24   goes to both the government and the defense.  I'll decide the

25   appropriate guidelines.  It's just their recommendation.  I

1    will neither strike them nor correct them.  It's just their

2    recommendation.

3           Paragraph 47:  The Court is overruling the statement

4    to strike that.  It's just a procedural statement, but I do

5    note in 48 and with regard to paragraph 49 and 50, the

6    defendant has no criminal history, so there's -- I'm not quite

7    sure what the issue is with declining to discuss it.

8    Suggesting he may have had one, I don't read it that way.  It

9    was simply there was nothing to discuss.  So I don't think any

10   changes are required there.

11          Paragraph 59, I believe, was corrected in the addendum

12   to strike that reference about his father.  That was not made

13   by him, and they did correct that in the addendum so that's

14   taken care of.

15          Paragraphs 74 and 106:  The clarification regarding

16   the defendant's use of Ambien was noted and covered in the

17   addendum, and I understand he is no longer taking that

18   prescription medicine.

19          Paragraph 81:  The clarification was also noted -- the

20   consequences regarding -- yes, I understand the loss of his

21   license to practice and potentially military benefits as

22   consequences.  I don't know that any further notation is

23   required for the presentence report on that.

24          Paragraph 98:  Everyone has agreed that the defendant

25   is not subject to the 2018 act that was noted and corrected by

1   the addendum, so that is resolved.

2        Paragraph 100 is the opinion of the probation officer,

3   and while the defendant may disagree and noted their

4   disagreement, and the Court understands that, I'm not striking

5   the opinion of the probation officer that this behavior would

6   be a risk.

7        Paragraph 107:  A minor correction that the defendant

8   was not a criminal prosecutor.  I suspect that was a

9   misunderstanding that he handled the Medi-Cal fraud unit, which

10   might have been assumed to be criminal prosecutions, but it was

11   just on the civil side, not particularly relevant to my overall

12   sentencing decision.

13        Paragraph 116:  Again, it's a guideline

14   recommendation.  It's just that, it's a recommendation.  The

15   Court won't strike it or amend it.

16        And paragraph 123 is mooted by the restitution

17   agreement filed by the parties.

18        I would note somewhat, perhaps, ironically that this

19   is the most detailed objection I have received ever to a PSR

20   and, yet, you missed paragraph 112 where it indicates that

21   Mr. Liddy pled guilty.  That should be corrected.  Mr. Liddy

22   did not plead guilty to this charge.  He stands before the

23   Court for sentencing after trial.  How did you miss that one?

24        I think that covered the government's objections as

25   well.  The government had attached their own guideline and,

1    again, ultimately, that's for the Court to decide.

2            So are there any other objections that the parties

3    want the Court to resolve regarding the PSR?

4            MR. BURSTEIN:  Your Honor, I'm not sure how -- can

5    your Honor hear me?  Can everybody hear me?

6            THE COURT:  You can take your mask off or go to the

7    lecturn.

8            THE CLERK:  You sound muffled.

9            THE COURT:  Yes.  Go ahead, take it off.

10           MR. BURSTEIN:  Just, I didn't know how the Court

11   wanted to handle our objections to the conditions of supervised

12   release.  I guess we should deal with that after the fact,

13   because we don't know if there is going to be supervised

14   release.

15           THE COURT:  Right.  And I do have notes on that but

16   we'll deal with that when we get to the conditions of

17   supervised release.

18           THE COURT REPORTER:  I'm sorry to interrupt.  Which

19   counsel was that?

20           THE COURT:  That's Mr. Burstein.

21           I assume you're the only one who is going to be

22   speaking?

23           MR. BURSTEIN:  No.  Mr -- I was just there for

24   purposes of my almost complete PSR objections.  For speaking

25   purposes, Mr. Johnson is going to be doing the majority.  So

1   I'm sitting down now.

2          THE COURT:  Okay.  Yes, the supervision and the fine

3   recommendations and those things, we'll deal with when we get

4   to that part of the sentencing.

5          Anything then from the government you had objections

6   on?

7          MS. GRIFFITH:  No, Your Honor.

8          THE COURT:  All right.  I'm going to give you a

9   tentative because this was briefed extensively, the Court is

10  very familiar, of course, with this case, and I think that to

11  some extent, the Court's tentative might very much narrow

12  issues that counsel may want to take time to discuss.

13         First of all, I'm going to do the guideline

14  calculation.  And I know there's disagreement about some of

15  these calculation numbers, but with regard to my ultimate

16  sentence, it's solely for the purposes of the fact that the

17  Court has to do what I believe to be an appropriate guideline

18  calculation.  So in this case, I believe the base offense

19  starts at an 18.  The Court is doing the plus-two adjustment

20  for the prepubescent minors, which is in accordance with the

21  stipulation of fact that was entered with the Court; the plus

22  four for the sadomasochistic because the commentary note for

23  that under 2G2.2(b)(4), note 3, the one image that the

24  defendant stipulated to, that is one of the images that was the

25  subject of the Court finding possession, refers to a bound and

1   blindfolded child, and that would meet within that definition;

2   and the plus two for the use of the computer.

3       Because I am making my decision based only on the

4   images to which the Court found the defendant in possession,

5   despite the fact that the government has shown there were

6   numerous other images available in -- not available but that

7   were found forensically, I'm not going to do an enhancement for

8   the number of images.  I think it's particularly significant in

9   this case because this defendant is very different from what I

10  would normally see in these cases.  He does not appear to have

11  been a collector in the traditional sense.  While the images

12  may have been saved and -- viewed and saved, they were all

13  deleted.  There is no -- more commonly for people like this, I

14  would find hundreds, maybe thousands of images that are saved

15  and accessible.  This just doesn't quite fit in that mold, and

16  so I'm not enhancing for images.

17      So that brings the defendant to a total offense level

18  of 26, his criminal history score is zero, he's in a category

19  I, and his guideline range would be 63 to 78 months.

20      The Court is giving departures that the government

21  also agreed with for military service, community service, some

22  mental health issues for a total of five points down to a 21,

23  and the guideline range of 37 to 46 months, which puts the low

24  end pretty much at the government's recommendation.

25      Interestingly, probation seemed very much on the same

1   page that I did that after having reviewed all of this,

2   weighing all of the mitigating factors, all of the somewhat

3   unusual circumstances of this case, and the defendant's history

4   and characteristics, came to the conclusion that for this

5   defendant no custody would really be appropriate, but for

6   purposes of general deterrence, made a recommendation of 21

7   months of custody.  And I agree with the first part and not the

8   second part.  Largely because I think -- and I will explain it

9   in a little more detail my analysis of the defendant's conduct

10  in this case, but in light of custodial time, the COVID

11  situation is weighing in as a factor as well.

12        We have to have, I think, in mind when we put people

13  into custody in the current situation that we're trying to

14  minimize the number of people who are incarcerated.  And there

15  are people who are much more, I think, for the safety of the

16  community, in need of incarceration than this defendant.  This

17  defendant can be adequately supervised so that he does not have

18  access to materials any more.  He is voluntarily and has been

19  in therapy.  He's embraced that part of it.  And while there is

20  still -- and I understand there are appellate issues that might

21  preclude him from fully embracing an acceptance of

22  responsibility here, I think he recognizes that the behavior

23  that is the subject of this case is inappropriate, and he's

24  moving in the right direction.  And I don't know that custody

25  for him would be necessary, and I don't think taking custodial

1   space that is more importantly reserved for other people, just

2   for purpose of general deterrence, makes any sense.

3         So the defendant has recommended five years of

4   probation.  And while this is a very serious offense and I

5   don't minimize it in any way, and it is always important when

6   we sentence people for this offense that the Court recognize,

7   and one of the reasons we always have the victim impact

8   statements, is there are victims of this offense.  There are

9   young children who are abused sexually, who are in some cases

10  virtually tortured for the sexual gratification of adults.

11  They are scarred for their lives.  Every time they know these

12  images have been recirculated, the wounds are fresh, the abuse

13  is alive again in their minds, and their own sense of

14  self-worth and value is further diminished.  And so people who

15  share these images and view it potentially as oh, I was just

16  looking at pictures always need to reflect on the fact that

17  these are real children who have really been injured and that

18  when we make a market for this sort of material, we are doing a

19  tremendous harm to the children and to our society in general.

20        With regard to the Court's understanding of

21  Mr. Liddy's behavior here, I see a man in his 50s who got on

22  the internet for more acceptable adult viewing and went down a

23  rabbit hole, and other people sent him material that he viewed

24  and that he saved.  And there is no evidence he was out

25  searching for it.  There is no search history that the

1   government provided to show that he was looking for this

2   material or sharing this material, but he was receiving it.

3   And while Mr. Liddy has not acknowledged -- and, again, I

4   understand for appellate reasons he may not want to -- that

5   these images that were sent to him in these chat rooms on his

6   computer ended up on a thumb drive and other off -- you know,

7   devices, downloading devices.  They had to be moved there.  And

8   that was fundamental to the Court's finding that he had viewed

9   them and saved them, and ultimately deleted them, but they

10  weren't just something that popped up on his screen and he

11  immediately hit delete.  And while I kind of keep hearing that,

12  that is not really in accordance with the facts that the Court

13  found at trial.  But, again, I don't think Mr. Liddy was

14  actively searching for this material, I don't think Mr. Liddy

15  was, on the scale of people who do this, a real player.  I

16  think he got caught up on something that got away from him.

17        And then you weigh in his positive factors.  He has

18  tremendous history of service to the country, both as a Marine

19  and subsequently to the community supporting veterans and other

20  community groups.  He is otherwise recognized in the community

21  as a man of integrity, a lawyer who worked for the state to

22  protect the state from fraud, family members who love him.

23        And it's not that surprising that I see people who

24  have a secret little place in their life that their family may

25  not know about.  But he's taking all the right steps to do all

1   the right things to put this behind him, and I think under the

2   circumstances here, the Court is inclined to grant the

3   defendant's request for five years of probation, and then we'll

4   talk about the terms and conditions, but I don't think

5   additional custodial time is necessary.

6          So I know that's not the government's position, and

7   I'm happy to hear anything you would like to say.  This is all

8   going to get appealed, I assume, so whatever you want to put on

9   the record, Counsel.

10         MS. GRIFFITH:  Your Honor, I would just note, and

11  certainly, this is an unusual case, and the fact that this case

12  is so different than the other cases doesn't negate why we're

13  here.  And the fact that somebody with Mr. Liddy's purported

14  moral code, his moral standing, the fact that he was a Marine,

15  the fact that he served this community had to be told by this

16  Court that possessing images of child pornography is wrong is

17  just beyond me.  I don't know how somebody who can look at the

18  images that the Court had to look at that we know the defendant

19  was looking at, how you have to be told that it's wrong,

20  morally and legally.

21         And I would submit to Your Honor that no, he wasn't

22  doing mass downloads and he didn't have a massive collection,

23  but this isn't someone who needed to go do internet searches

24  because he was communicating with the people that were giving

25  him this stuff on a regular basis.  The NCMEC report, detail

1   information, and the activities engaged by the defendant that

2   took place in January and February, and it was the night before

3   the search warrant that the last image was saved and

4   downloaded, the stipulated first image, Your Honor.  And that

5   wasn't some random image that was deleted.  That was an image

6   that was saved with the words "jtf.panama," something as we

7   know in the sentencing memo is a location and information that

8   is important to the defendant.  And that download happened nine

9   hours before law enforcement knocked on his door.

10          So while we appreciate the post-rehabilitation effort,

11  it didn't appear that Mr. Liddy was on his way to do that.  And

12  the image that he saved nine hours before the search warrant

13  was executed was an image that was saved in "USMC bios new

14  folder."  That was something that was important to him.  That

15  was something that he moved into that location, and that was an

16  image of a prepubescent child being sodomized.

17          And I appreciate the Court has to weigh all sorts of

18  factors, and general deterrence can't be the only reason for

19  custodial time, but telling this defendant and telling other

20  defendants that you can't engage in this activity over a period

21  of time does need to mean something.  And we certainly

22  understand COVID is something that has popped up even since

23  this particular trial.  So we certainly don't begrudge the

24  Court, but Mr. Liddy can be all of the things that the Court

25  has identified, but he is also this:  Someone who turned to

1  real images of children being sexually exploited to deal with

2  his own pain, to deal with the loneliness from his wife, to

3  deal with his PTSD.  And the fact that there are thousands of

4  military people right now who come back from war and all of

5  these other things and people who are suffering depression

6  don't turn to this as their medicine.  And he did.  And that

7  was the choice he made, whether or not Ambien or alcohol was

8  involved.  And the government's concern is that the

9  probationary sentence sends a message that that's okay.  And I

10  understand there are great collateral consequences, and,

11  obviously, we're going to agree to disagree, but I would at

12  least hope the Court would consider those things when

13  fashioning a sentence or, at least, considering the variety of

14  objections that had have been raised to supervised release,

15  what will now likely be the probationary conditions.  But this

16  defendant isn't that special from most other defendants who

17  commit the crime.  He's getting the benevolence of the Court,

18  and we disagree with that, but it needs to be understood and

19  made clear that the only reason why we're here is Mr. Liddy.

20  And this hasn't been blown out of proportion because children

21  being sexually exploited is something that is real and

22  terrifying, especially for the two victims that are being made

23  whole, at least, in part because Mr. Liddy is agreeing to

24  restitution.  So unless the Court has any other specific

25  questions, we would submit.

```
 1              THE COURT:  No.  Thank you, Counsel.

 2              Mr. Johnson.

 3         (Noise from the courtroom)

 4              THE COURT:  Are you all right?

 5              MR. JOHNSON:  Yeah.

 6              THE DEFENDANT:  The court --

 7              THE COURT:  Sir, sir, it's all right.  Sit down.  Take

 8    your time.  I'll hear from Mr. Johnson, and then you'll have an

 9    opportunity.  If you don't feel comfortable to address the

10    Court, you could have someone read your statement.  But why

11    don't you just take your time, sir.

12              Counsel, do you want to proceed?

13              MR. JOHNSON:  Your Honor, I have addressed every one

14    of those arguments in my sentencing memo.  I see no reason to

15    respond to the government's pitch.  I just want to add that

16    Mr. Liddy is the most anxious client I've ever had.  He is the

17    most hurt, he is the most damaged client, and I have been with

18    him over three years.

19              THE COURT:  All right.

20              Mr. Liddy, this is your opportunity to address the

21    Court.  I can see you're emotionally overwhelmed, but if you

22    want to say something, now is your chance.  You can sit at

23    counsel table or sit where you are.  We'll get you the

24    microphone, or you can have Mr. Burstein read your statement.

25              MR. BURSTEIN:  Would that be --
```

1          THE COURT:  That's fine if that's what he would

2    prefer, then if you would just --

3          THE DEFENDANT:  I --

4          THE COURT:  No, that's okay, sir.  I understand.

5          THE COURT REPORTER:  I cannot hear Mr. Liddy.  I'm

6    sorry.

7          THE COURT:  That's all right.  Mr. Liddy is --

8          THE CLERK:  -- for the court reporter.

9          MR. BURSTEIN:  For the record, Mr. Liddy said, I

10   apologize for my composure before the Court.  He is crying and

11   shaking and having difficulty, so just for record.

12         And I just, Your Honor, wanted to echo what

13   Mr. Johnson said.  I have not been practicing as long, but I

14   have been practicing for a long time here, and I have never

15   seen somebody with the genuine contrition that Mr. Liddy has

16   shown.  This is not -- this is what happened at the probation

17   interview, this is what happens at our office.  I mean he -- if

18   anyone knows the things that Your Honor has highlighted, I can

19   assure the Court Mr. Liddy understands.  With that, this is the

20   statement from Mr. Liddy:

21         Your Honor, thank you for the opportunity to address

22   the Court directly.  I want to assure this Court and the

23   community that I deeply regret and I'm deeply ashamed of my

24   behavior.  I'm sorry for my actions on the internet.  I should

25   have used better judgment.  I blame no one but myself for this

1  lack of judgment.

2         At the beginning of this case when the FBI questioned

3  me, I told the truth.  Whenever I saw an image of child

4  pornography, I did delete it.  I understand that image -- that

5  these images are horrible and more prolific on the internet

6  than I ever knew.  I feel very sorry for the minors involved.

7  Their abuse and exploitation is horrific.  My prayers go to

8  them.

9         My actions also profoundly hurt my wife, my family, my

10 neighbors, and friends.  I also apologize to the men and women

11 with whom I proudly served in the Marines.  I spent a lifetime

12 doing the right thing in protecting others.  Here, I made a

13 terrible mistake.  I hurt my wife, my family, my country,

14 denigrated my service as a Marine, and lost my profession.  I

15 will be forever haunted by my actions, and I deeply regret the

16 harm I caused.  I hope this Court, my wife, my family, my

17 community, and my God will forgive me one day.

18         THE COURT:  All right.  Thank you, sir.

19         The Court has already gone through the advisory

20 sentencing guidelines, and as I said, the guideline range ends

21 up being 37 to 46 months in this case.  I did consider all the

22 3553(a) factors, the nature and circumstances of the offense,

23 the history and characteristics of the defendant, the need to

24 deter criminal conduct and protect the public from further

25 crimes by this defendant.

1          And, again, I recognize the reticence to, perhaps,

2    fully embrace to the Court your responsibility at this time

3    because of preserving appellate issues.  I hope that at some

4    point you will acknowledge, perhaps, to your therapist or to

5    whomever that this "I saw them and deleted them, I saw them and

6    deleted them" is not quite the truth, because if it was, we

7    wouldn't probably be here sentencing you.  There was

8    possession.  There was saving.  There were images that you

9    retained, at least, for some period of time.  But I know that's

10   the last step and may be hard for you to acknowledge, and I

11   understand that.

12          So the Court, pursuant to the Sentencing Reform Act of

13   1984 and in accordance -- oh, well, there is no agreement -- it

14   is the judgment of this Court that the defendant be sentenced

15   to five years of probation with -- regarding the terms of the

16   probation, it will be the usual terms and conditions and then

17   the following terms of supervision that probation has provided.

18          And the first term regarding the search terms, the

19   defense has objected to.  That is overruled.  That is a

20   standard search condition.  I understand other people live on

21   the premises.  That's the way it goes.  His premises will be

22   subject to search based on reasonable suspicion, not just not

23   a, you know, not unannounced.  But people who live with him

24   have to be aware of that, and if they have something to hide,

25   they should know.

1          So submitting his person, property, residence, abode,

2    vehicle, papers, computer, social media accounts, and any other

3    electronic communications, as data storage devices or media,

4    and effects to search at any time with or without a warrant by

5    law enforcement or a probation officer with a reasonable

6    suspicion concerning a violation of a condition of probation or

7    unlawful conduct, and otherwise in the lawful discharge of the

8    officer's duties.  Failure to submit to a search may be grounds

9    for revocation, and other residents of the premises should be

10    warned that it will be subject to search pursuant to this

11    condition.

12          Number two:  Consent to a third-party disclosure to

13    any employer, potential employer concerning any restrictions

14    that are imposed by the Court.

15          Number three:  Not to use or possess devices which can

16    communicate data via modem or a dedicated connection, and not

17    to have access to the internet without prior approval from the

18    Court or the probation Officer.

19          The offender will consent to the installation of

20    systems that enable the probation officer to monitor computer

21    use on any computer owned or controlled by the offender, and

22    the offender shall pay for the cost of the installation of the

23    computer or software.

24          In response to the defendant's concerns that because

25    so many devices include internet connections, probation offered

1    the modification that this applies to computers, laptops,

2    tablets, and cell phones.  And the Court would limit it to

3    those things unless there is a reason later to modify based on

4    some technological development.

5         Not to associate with or have any contact with any

6    known sex offenders unless in an approved treatment and/or

7    counseling setting.

8         Not to have any contact, direct or indirect, either

9    telephonically, visually, verbally, or through written material

10   or through any third-party communication with a victim or

11   victim's family without prior approval of probation.

12        I'm not going to impose the "no contact with anyone

13   under the age of 18."  There is no evidence in this case that

14   the defendant has ever had any physical contact with a child or

15   a young person.  If in the course of his continued therapy

16   should that become an issue that is shared with probation, they

17   can seek that condition, but I don't think it's necessary in

18   this case.

19        Not to accept or commence employment or volunteer

20   activity without prior approval of the probation officer, and

21   employment should be subject to continuous review and

22   assessment by probation.

23        Similarly with number five, the Court is not going to

24   institute the loitering condition.

25        Number nine:  Not possess or view any materials such

1  as videos, magazines, photographs, computer images, or other

2  matters that depict sexually explicit conduct involving

3  children as defined by Title 18 United States Code Section

4  2256(2).

5       Now, the sexually explicit conduct involving adults,

6  the defendants asked not to include.  The government --

7       MS. GRIFFITH:  Given the fact by the defendant's own

8  admission, his conduct into child pornography was related to

9  his alternative discussions with individuals who like anything.

10 We think for treatment model, it is absolutely necessary that

11 this condition be included as written for the treatment.  It's

12 talking about actual sexual explicit conduct, the pornography,

13 not simulated movies or R rated moves.

14      MR. BURSTEIN:  We -- sorry, your Honor.  I don't think

15 we objected to that.

16      MS. GRIFFITH:  Well, your Honor, it's included in

17 the--

18      THE COURT:  I have it --

19   (cross-talk)

20      THE COURT:  I have it as an objection, but fine.

21 That's fine.  Then the Court will continue to include that

22 portion that says:  And/or actual sexually explicit conduct

23 involving adults as defined by Title 18 United States Code

24 Section 2257(h)(1), and not patronize any place where such

25 materials or entertainment are the primary material or

1    entertainment available.

2           THE CLERK:  Your Honor, I'm sorry.  Before you

3    continue, for condition number eight, you did not include?

4           THE COURT:  I did not include number eight.

5           Number ten:  Complete a sex offender evaluation which

6    may include periodic psychological, physiological testing, and

7    completion of the Abel Assessment at the direction of the Court

8    or the probation officer.  If deemed necessary by the treatment

9    provider, the offender shall participate and successfully

10   complete an approved state certified sex offender treatment

11   program including compliance with treatment requirements of the

12   program.

13          The Court shall authorize the release of the

14   presentence report and available psychological evaluations to

15   the treatment provider as approved by the probation officer.

16   The offender will allow reciprocal release of information

17   between the probation officer and the treatment provider.  The

18   offender may also be required to contribute to the cost of the

19   services rendered in an amount to be determined by the

20   probation officer based on ability to pay.

21          The objection regarding the polygraph examinations is

22   overruled.  The Court is including the polygraph examinations

23   that may be used following completion of a formal treatment

24   program as directed by the probation officer, in order to

25   monitor adherence to the goals and objectives of treatment and

1    as part of the containment model.

2          This is not being offered as a part of a criminal case

3    here.  Your objection was that polygraph examinations are not

4    recognized as valuable in criminal prosecutions.  This is part

5    of the treatment containment and a helpful way to make sure

6    that the defendant is being honest with himself, and I think

7    they're appropriate, and they have been approved widely, and by

8    the Ninth Circuit as appropriate conditions here.

9          With regard to residing in a residence approved in

10   advance by the probation officer and any changes in residence

11   shall be preapproved by probation, the objection was basically

12   it was unnecessary because he's going to stay where he lives,

13   but I'm going to include it because we're not going to deny he

14   can stay where he lives unless there is an issue, but more for

15   the purposes if they relocate, they need to let probation know.

16         And I'm not going to include the ongoing location

17   monitoring because I don't think that's necessary at this point

18   anymore.

19         Anything else then that the parties want to discuss

20   regarding conditions of supervision?

21         MS. GRIFFITH:  No, Your Honor.

22         MR. BURSTEIN:  Just so we're clear then, and for

23   probation, so long as he is staying where he is living, he

24   doesn't need further approval for that?

25         THE COURT:  Correct.

1         MR. BURSTEIN:  Okay.

2         THE COURT:  That's correct.

3         MR. BURSTEIN:  Then --

4         THE COURT:  I have a point of clarification because

5    normally I see it in these conditions, it's not here, whether

6    the defendant has to register.

7         MS. GRIFFITH:  Your Honor, by virtue of the fact that

8    the Court has found him guilty, the United States does believe

9    he has to register.  I am anticipating defense counsel is going

10   to argue that until his conviction is deemed to be final, he is

11   not required to register as a sex offender, so I think it's

12   going to be up to the Court to decide what is appropriate.  He

13   will have to register by virtue of his conviction, but I

14   anticipate defense counsel is going to argue that that's not

15   applicable until any appeals and habeas is completed.

16        THE COURT:  Well, it's a state law.

17        MS. GRIFFITH:  It is, Your Honor.

18        THE COURT:  And so, he has the condition that he can't

19   violate any state or federal laws.  So if his conviction is not

20   reversed on appeal and it becomes final, then he has to

21   register if the state law requires it.  I'm not going to

22   determine whether the state law requires it based on the nature

23   of this conviction, but if he does, and he doesn't, then his

24   violation here would be in violation of breaking a state law.

25        MS. GRIFFITH:  Yes, Your Honor.

```
 1              THE COURT:  So I'm not going to add it --
 2         MS. GRIFFITH:  All right.
 3         THE COURT:  -- as a condition of supervision.
 4         MR. BURSTEIN:  We agree with the Court's statement,
 5  leaving aside collateral challenges.  If his conviction is
 6  sustained on appeal and becomes final, that way he would have
 7  to register.
 8              MS. GRIFFITH:  I want to be clear, though, that he has
 9  to register by virtue of him being federally convicted under
10  the rules regarding SORNA.  So his obligation to register is by
11  virtue of his federal conviction.  As a practical matter, he
12  will ultimately register with the California authorities, but
13  his failure to register, regardless of travel, when his
14  conviction is deemed to be final could be a violation of
15  federal and state law.
16              THE COURT:  All right.
17         MR. BURSTEIN:  Which is what we're saying exactly.
18  And in the excess of caution, what the Court could do to make--
19  I don't think the government is going to prosecute him for not
20  registering after the conversation we just had until the appeal
21  is final, so I think that would go without saying.  But in the
22  excess of caution, the Court can stay that condition under
23  Federal Rule of Criminal Procedure 38 pending the outcome of
24  the appeal.  However we want to do it, we're all -- I'm trying
25  to get to where the Court is at.  If he loses the appeal, he
```

1    needs to register, but he shouldn't register now before the

2    appeal for a number of reasons.

3           MS. GRIFFITH:  Your Honor, my only clarification was

4    to your Honor's comments with respect to he would be in

5    violation of California Penal Code.  I just wanted the Court to

6    be clear so there wasn't some sort of argument that Mr. Liddy

7    wasn't on notice that he also has an obligation under federal

8    law.  My attempt was to clarify your point.

9           THE COURT:  Okay.  The condition is that the defendant

10   must comply with the requirements of the Sex Offender

11   Registration Notification Act under federal law as directed by

12   the probation officer, the Bureau of Prisons, or any state sex

13   offender registration agency in the location where the

14   defendant resides, works, is a student, or was convicted of a

15   qualifying offense.  So he has to comply with the law, the

16   federal law and the state law, once the conviction is final.

17          MR. BURSTEIN:  Right.  Okay.

18          THE COURT:  So he's on notice he has to do it.  If he

19   doesn't have to do it until the conviction is final because you

20   filed an appeal, then he doesn't have to do it until the

21   conviction is final.  If, while appeal is pending, the law

22   requires he still register, I'm not going to counterman that.

23          MR. BURSTEIN:  No.  And that is, I guess, now we're

24   into the issue, which is, how are we going to make sure what we

25   all think is right is right.  And, I mean, obviously nothing

1  happens until somebody says he did something wrong and brings

2  charges.  So that is why I was suggesting that maybe the best

3  way to do it is on the understanding that that condition is

4  stayed pending appeal under Rule 38, and that way, there is no

5  suggestion that he is doing anything wrong by not registering

6  until the appeal is final.

7      THE COURT:  Does the government have any objection to

8  staying his requirement to register until his appeal is

9  resolved?

10      MS. GRIFFITH:  Your Honor, with all due respect to

11  this Court, I don't want this to be deemed to be an advisory

12  opinion with respect to what the Court believes the law to be

13  on state law and federal law.  And it's tantamount to

14  Mr. Burstein is asking the Court basically to -- if the state

15  of California has determined he has to register regardless of

16  the pendency, that is not the U.S. Attorney's Office's purview,

17  and the Court has, quite frankly, no jurisdiction to prevent

18  that.  So I think the condition that -- the defendant is on

19  notice, and it will be up to the authorities to decide, and we

20  will address it accordingly.  But we don't want to get in a

21  situation where the Court is issues an advisory opinion based

22  on what defense counsel believes the law to be.

23      THE COURT:  All right.  I'm going to just leave it

24  that he has to comply with the law.  If the state says he has

25  to register now, I really can't tell the state no.  I can't.

1   And I don't have briefing on that and I'm not going to stick my

2   foot in that.  So if there's something he needs to do and you

3   can ask the state to hold it until the Ninth Circuit decides, I

4   think that's the more appropriate step than asking me to hold a

5   legal requirement that he has to -- he has to comply with the

6   law.  If the law says he has to do it now, then you have to

7   seek relief from that law.  If it's a state law, you have to

8   seek it from the state.

9       MR. BURSTEIN:  And in terms of SORNA, it's our

10  position that he doesn't have to register until the appeal

11  would be complete, which is the federal law.

12      THE COURT:  And I don't know.  And counsel is

13  absolutely right, I'm not going to give you an advisory

14  opinion.  If he doesn't have to register until there's a final

15  decision in this case if there's an appeal notice, then that

16  would -- that's legal advice can you give him.  And you can

17  discuss it with the government.  The only thing I'm adding to

18  his probation conditions is that he has to comply with this law

19  when the time is ripe to comply with it, okay?

20      MR. BURSTEIN:  We'll discuss it afterwards and figure

21  that out, because I'm not sure that there's a clear answer one

22  way or the other.

23      THE COURT:  All right.  Anything else then?

24      MS. GRIFFITH:  Not as it relates to the probation

25  conditions, Your Honor.

1          THE COURT:  With regard to the restitution, the Court

2   will enter the order of restitution that the parties have

3   stipulated to and submitted as a proposed order.  That will

4   require that Mr. Liddy pay $6,000 total in restitution to the

5   following victims:  $3,000 to Jenny of the Jenny Series and

6   $3,000 to Tara of the Tara Series.  That amount is to be paid

7   forthwith to the clerk's office with the entry of judgment in

8   this case.  So I'll sign that.

9          MS. GRIFFITH:  Your Honor, I think it was not later

10  than ten days.  I don't know if the defendant brought the

11  cashier's check today, but we did want to give him a period of

12  time.

13         THE COURT:  Yes.  Not later than ten days within the

14  entry of this judgment.

15         MR. BURSTEIN:  Our understanding is that it is held in

16  trust pending the appeal.

17         MS. GRIFFITH:  As the plain language of the order

18  clearly states, Your Honor.

19         THE COURT:  Okay.  And the order of forfeiture.  I had

20  a preliminary order.  I have a preliminary of forfeiture.  I

21  don't expect there is any argument about that?  The Court

22  will--

23         MR. BURSTEIN:  No, Your Honor.

24         THE CLERK:  That was already entered, your Honor, as

25  of yesterday.

1          THE COURT:  Yes.  I have a copy of it.  The Court will

2     enter the order of forfeiture.

3          All right.  I think the defendant certainly has the

4     means to pay a fine in this case; and given that the Court has

5     given him a noncustodial sentence, I think a fine is entirely

6     appropriate.  The Justice For Victims of Trafficking Act

7     special assessment of $5,000 is imposed, a fine of $10,000 is

8     imposed to be payable -- I'll let you work out the terms with

9     the government as to whether -- for paying those two fines.

10    The Court will just say forthwith, but I don't know what his

11    current economic --

12         MS. GRIFFITH:  Based on the information in the PSR,

13    your Honor, the defendant has liquidated assets, I believe, in

14    excess of $2 million so one would think that maybe one trip to

15    the district clerk's office would be appropriate.

16         THE COURT:  And the special assessment of $100 is

17    imposed.

18         MR. JOHNSON:  Thank you.  And, your Honor, would the

19    Court then exonerate the bond?

20         THE COURT:  Yes.  Let me finish.

21         MR. JOHNSON:  Oh, I'm sorry.

22         THE COURT:  That's okay.

23         The Court finds the sentence imposed to be sufficient

24    but not greater than necessary to comply with the statutory

25    purposes of sentencing and the policy reasons and factors set

1   forth in Title 18, United States Code Section 3553(a),

2   including the need for the sentence to reflect the seriousness

3   of the offense, promote respect for the law, provide just

4   punishment, and avoid unwarranted disparity with the sentences

5   of others with similar conduct and records.

6           Your time for appeal commences as of the entry of the

7   judgment today.

8           And the motion to exonerate the bond, is the

9   government moving to exonerate?

10          MS. GRIFFITH:  Yes, Your Honor.  We would so move.

11          THE COURT:  The motion to exonerate the bond is

12   granted.

13          MR. JOHNSON:  And I'll submit a proposed order in that

14   regard to the Court because there's a security attached to it.

15          THE COURT:  Yes.  If there's property attached, you

16   need to submit the written order, and as soon as I get it, I'll

17   execute it so whatever lien there is on his property can be

18   release.

19          MR. JOHNSON:  Thank you, your Honor.

20          THE COURT:  So, Mr. Liddy, you will now transfer your

21   supervision from pretrial to your probation officer who will

22   supervise you for the terms of your probation, and, hopefully,

23   I won't see you back here again.  I think that's all for today.

24      (Court in recess at 2:15 p.m.)

25      *** End of requested transcript ***

1                    CERTIFICATE OF OFFICIAL STENOGRAPHER

2

3           I, Mauralee Ramirez, Federal official Court

4    Stenographer, in and for the United States District Court for

5    the Southern District of California, do hereby certify that

6    pursuant to Section 753, Title 28, United States Code that the

7    foregoing is a true and correct transcript of the remote

8    stenographically reported proceedings held in the

9    above-entitled matter and that the transcript page format is in

10   conformance with the regulations of the Judicial Conference of

11   the United States.

12

13           Dated this 1st day of October 2020.

14

15           /S/ Mauralee Ramirez_____
             Mauralee Ramirez, CSR No. 11674, RPR
16           Federal Official Court Stenographer

17

18

19

20

21

22

23

24

25